Alireza Vazirabadi
843 Vaughn Street
Aurora, CO 80011
720-218-4769
avazirabadi@yahoo.com
Plaintiff, Pro Se

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2017 JUL 18  PM 2: 50

JEFF... P. COLWELL
CLERK

BY_____ DEP. CLK

# IN THE UNITED STATES DISTRICT COURT
# FOR DISTRICT OF COLORADO

ALIREZA VAZIRABADI, Pro Se

    Plaintiff,

V.

DENVER HEALTH, as Employer,

ROBIN D. WITTENSTEIN, in her official capacity,

JEREMY LEE, in his individual and official capacities,

ELIZABETH FINGADO, in her official capacity,

JOHN AND JANE DOES 1 THROUGH 10, and

DOE ENTITIES 1 THROUGH 10,

whose true names are unknown,

Defendants.

**'17 - CV - 01737**

CIVIL No._____

14th Amendment of U.S. Constitution,
42 U.S.C. § 1983,
Title VII,
ADEA 1967

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

## Parties

1. Plaintiff, Job Applicant, Alireza Vazirabadi, 54-year-old, is and at all times material hereto was an Iranian-American citizen of the State of Colorado, residing in Aurora, Arapahoe County, Colorado.

2. Defendant, Denver Health, is Denver public hospital in the City and County of Denver, Colorado, and employer within the meaning of 42 U.S. Code § 2000e-(b).

3. Defendant, Robin D. Wittenstein, in her official capacity, is Denver Health Chief Executive Officer. She works in Denver, Denver County, Colorado.

COMPLAINT      P a g e  1 of 26

4. Defendant, Jeremy Lee, as individual, and in his official capacity, is Denver Health Assistant Director of Lean[1] Systems Improvement Department. He works in Denver, Denver County, Colorado.

5. Defendant, Elizabeth Fingado, in her official capacity, is Denver Health Director of Strategic Support Services, and Director of Lean Systems Improvement Department. She works in Denver, Denver County, Colorado.

6. Upon information and belief, Defendants John and Jane Does 1 through 10 (the "Individual Defendants") are individuals whose names and addresses of residences are unknown.

7. Upon information and belief, Defendants Doe entities 1 through 10, the names and addresses of residences of which are unknown.

### Jurisdiction And Venue

8. Jurisdiction is asserted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5, 28 U.S.C. § 1331 and §1343

9. Defendants are employees and employer within the meaning of Title VII.

10. Plaintiff is United States citizen and resident of Aurora, Colorado since 2005.

11. The alleged unlawful employment practices took place at the following location: Denver, Colorado.

---

[1] Lean is a systematic approach of continuous improvement, based on the Toyota Production System (TI'S) of LEAN principles and LEAN tools, used for elimination of waste.

12.     Other unknown Defendants may reside in the District of Colorado.

## Administrative Procedure

13.     Plaintiff filed a charge of discrimination with the Equal Employment Opportunity

Commission ("EEOC") on September 15, 2016 regarding the alleged discriminatory

conduct by Defendants.

14.     Plaintiff received from the EEOC a *Notice of Right to Sue* the Defendants on May 6, 2017.

Attached is a copy of the *Notice of Right to Sue*.

## Nature Of The Case

15.     Defendants violated Plaintiff's Constitutional Rights under the Fourteenth Amendment.

16.     Defendants have discriminated against Plaintiff because of national origin and age.

17.      Defendants have discriminated against Plaintiff by failure to hire under Title VII of the

Civil Rights Act of 1964 and 1991 and ADEA 1967.

## Facts Common To All Causes of Actions

18.     54-year-old Plaintiff, based on his national origin and age, was discriminated for two

similar positions—a Junior and Senior positions—despite having twice years of direct experience

and education than 28-year-old and 34-year old hired candidates. Majority of Plaintiff's interview

panel members (65%— three out of five members), prior to working at Denver Health, all three

worked together within the same organization and department.  34-year-old hired individual also

graduated from same institution that Plaintiff's three interview panel members worked before.

28-year-old hired candidate, two months before interview and hiring, had six-month internship

with Defendants' department.

19.     On or about July 8, 2016, Plaintiff responded to Defendants' job advertisement on

Indeed.com, for positions of Lean Facilitator position (Requisition ID: 44362) and Lean

Coordinator (Requisition ID: 44376). Neither of these two positions required any foreign *language*

*fluency(bilingual)*. Plaintiff registered at careers.peopleclick.com to submit his resume-letter, as

well as answering online questions. One online question asked if Plaintiff is *"fluent"* in any other

language. Plaintiff entered Farsi/Persian, identifying him as Iranian national origin, as shown in

attached Exhibit 1. Defendants' November 2016, page 3 Position Statement, attached as Exhibit 2

states: *"completion of this question* [language fluency] *was not required* [by Plaintiff] *to move*

*through the application process."*  Before or after language fluency question, Plaintiff did not see

any statement indicating language fluency response is *not required* or it is optional. In Exhibit 2,

Defendants confirm: *"With respect to the Lean positions Mr. Vazirabadi applied for, being able to*

speak <u>*another language was not a qualification*</u> [job requirement]*"*.

20.     On July 8, 2016, shortly after Plaintiff submitted his application online, he received an

email from Denver Health Recruitment confirming his application submitted successfully, as

shown in attached Exhibit 3. Moments later, from same sender, Plaintiff received second email

requiring to complete an *online assessment test*, <u>before Plaintiff's application could be reviewed</u>

<u>by the hiring manager</u>, as shown in attached Exhibit 4. With a link in the email, Plaintiff landed on

assess.shlonline.com to take Denver Health online assessment test. While Plaintiff was answering

problem questions, one question appeared on his screen asking: *"Are you over the age of 40?"*,

with YES and NO buttons to check. Plaintiff checked YES and proceeded to next questions.

Plaintiff is 200%— not 100%— sure, he was asked this question. In Position Statement,

Defendants claim Plaintiff was "not" asked *"Are you over the age of 40?"*. On page 5 of Position

Statement (Exhibit 5), Defendants listed Plaintiff's application questions, but did not include the

question in his *online assessment test* that asked Plaintiff *"Are you over the age of 40?"* Plaintiff is certain Discovery will corroborate his allegation.

21.     On July 15, 2016, Plaintiff participated in a 30-minute phone interview with five interview panel members: Jeremy Lee (Age 40), Carol Ann Kelly (Age 50), Sharif Abdelhamid (Age 37), Scott Pegues (Age 45) and Hanna Andress (Age 26). On page 2 of Denver Health Position Statement (Exhibit 6), Defendants correctly listed Plaintiff's five interview panel members. On page 8 (Exhibit 7), Defendants incorrectly included Lindsay Beaudry (Age 33) as the sixth person in Plaintiff's interview panel. Plaintiff was asked his reasons for applying at Denver Health, as well as few Lean-related questions. Plaintiff, like many of his past successful interviews resulted to job offers and hiring, he provided skillful responses to questions. For example, Per Denver Post March 13, 2016 article, attached as Exhibit 8 (last page of article copied), titled: *"Why are so many doctors leaving Denver Health?"*, per Dr. Ernest Moore, interim trauma medical director: *"scheduling surgeries has become an issue, particularly for patients who need more than one. That's where the frustration arises.."*. In the same article Denver Health ex-chief, Arthur Gonzalez, indirectly confirms this *issue* by stating: *"trauma or urgent surgeries, elective surgeries sometimes have to be delayed or rescheduled."* Given this serious challenge facing Denver Health, in the interview, Plaintiff stated his qualification and great interest to address this serious capacity and scheduling challenge facing Denver Health. Unfortunately, August 3, 2016, Plaintiff received an email from Defendant, Jeremy Lee, stated Plaintiff no longer considered for positions, as shown in attached Exhibit 9.

22.     For number of years, prior to working at Denver Health, three of the five Plaintiff's interview panel members: Jeremy Lee (Defendant), Carol Ann Kelly and Sharif Abdelhamid, all

worked together and were friends at Service Learning RHCHP of Regis University in Denver. Per attached YouTube Exhibit 10 screenshot, dated July 2012, Defendant Jeremy Lee, credited as Director and Sharif Abdelhamid, as Associate Director at the Regis University. During same years, per attached LinkedIn resume Exhibit 11, Carol Ann Kelly was working at same Regis University organization that Jeremy Lee and Sharif Abdelhamid worked. Per attached Exhibit 12, 34-year-old hired candidate, Erin Phillips, similar to three members of Plaintiff's interview panel is a graduate of same Regis University. Per attached Exhibit 13, 28-year-old hired candidate, Agustin Leone, about two months before hiring at Denver Health, had six-month internship within Defendants' Elizabeth Fingado and Jeremy Lee Lean Systems Improvement Department.

23.    Per Defendants' Position Statement on page 2, last paragraph, attached as Exhibit 6: *"While on paper Mr. Vazirabadi had listed experience in Lean processes and was thought to be quite personable during the interview, he did not speak well to the interview questions and failed to provide solid examples of past experiences when responding to the questions"*. In Exhibit 13, Plaintiff presented the fact that 28-year-old hired candidate was an intern with Defendants' Lean Systems Improvement Department, short time before hiring. Exhibit 12 indicates 34-year-old hired candidate was also graduate of same Regis University program that three hiring panel members (65% of hiring panel) worked before. Plaintiff alleges, prior to interviews, hired candidates, based on already established relationships with hiring panel members, had privilege information—information and communication that Plaintiff did not have—and preparation for *key words and points needed hearing* in a short 30-minute phone interview to gauge years of direct experience and accomplishments. Plaintiff is confident Discovery materials will reveal that the pre-existing relationships among hired and hiree was one of the main reasons for Plaintiff's loss of

fair process. This charade process contrived farce interview denying Plaintiff a level playing field for fair appraisal.

24.   Per attached Exhibit 14 article, Dr. Patricia Gabow, former Denver Health CEO, in 2003 got involve in introducing customized "Lean" manufacturing concept for improving cost and quality of health care at Denver Health. To quantify potential improvement opportunities at Denver Health, and obtaining federal grant for patients' health care experience study, Dr. Gabow hired an *"Industrial Engineer"* to map some of the hospital processes. In 2003, thirteen years ago as of 2016, Plaintiff as a degreed *"Industrial Engineer"* already had 10 years of direct experience in mapping various business processes for major technology companies in Silicon Valley in multi-million dollars projects, similar to Dr. Gabow mapping project. In that 2003 year, in terms of qualification, 100% of Plaintiff's interview panel members would have been unqualified to complete such a task for Denver Health. 28-year old hired candidate, at that time was 15.

25.   For over three decades, in addition to oppressing its own people, Iranian regime has created great damage and fear of its ideology, persecution and domination among populations of Arab countries, particularly in Saudi Arabia and Egypt. In Egypt, this fear manifested in a military coup that moved majority-voted President Morsi to prison. In Exhibit 6, Defendants' Position Statement: *"Both positions report to Lean Assistant Director Jeremy Lee who led the selection process. After reviewing the online application submissions..."*, This confirms Defendant, Jeremy Lee, was aware of Plaintiff's Iranian national origin, by Plaintiff's confirmation to Farsi (Persian) *language fluency(bilingual).* Exhibit 10 confirmed prior to working at Denver Health, for years, Defendant Jeremy Lee and Sharif Abdelhamid were friends and colleagues at Regis University. Given the friendship between Defendant Jeremy Lee and Sharif Abdelhamid, who is American

with Arab-Egyptian heritage, Plaintiff alleges his national origin worked against his hiring. Upon

Discovery, Plaintiff is confident to confirm this relation played role for his job discrimination.

26.     Per Exhibit 6, second paragraph: "*Mr. Lee created 2 pools of 8 candidates to conduct*

*group telephone interviews...*" With pertinent redactions, Defendants' Position Statement did not

include copies of all candidates' interview panel members' notes. Defendants provided only

copies of Plaintiff's own resume and two hired candidates' resumes, without panel interview

notes. With Discovery, Plaintiff is confident rejected candidates' resume, nationality (vis-a-vis

*language fluency/bilingual* questioning), age questioner— "*Are you over the age of 40?*"

assessment question— and interview notes, will substantiate Plaintiff's Cause of Actions.

27.     Per Exhibit 6 footnote: "Mr. Lee made his recommendation for hires for each position to

his boss Elizabeth Fingado (Caucasian; Age 53), the Director of the Leans Systems Improvement

Department, *who made the final hiring decision.*" Defendants' statement confirms Elizabeth

Fingado, as "final hiring decision" maker, and the representative authority of Denver Health

organization has given her the right for such hiring, which confirms "cat's-paw" liability.

28.     In Exhibit 2, Defendants state reason for *language fluency* question is "Denver Health

offers[*asks*]  this question, because at times the organization may have a job position for which

bilingual is a preferred qualification and this question allows applicants to submit this information

during the online application process." Similarly, one could rationalize *"pursuit of Happiness"*

clause in the Declaration of Independence allows two-term Presidents to run for third term and

beyond, or Rocky Mountain Oysters are made of *oyster*. Denver Health published facts debunk

Defendants' not cognizable reasoning, as merely intended  to cover-up systematic classification of

job applicants' national origin, religion and ethnicity by *language fluency/bilingual* questioning.

For example, Plaintiff stated he is *bilingual* in Farsi/Persian that easily identified his Iranian national origin, with 99% accuracy and being Muslim and white. Arabic bilingual applicants confirm they have Middle Eastern national origin, with high probability of being Muslim. Somali bilingual applicants for sure confirm Somalian national origin with 99% probability of being Black Muslim. Amharic bilingual applicants confirm Ethiopian national origins that are Christians and racially black. Without *language fluency/bilingual* questioning, it is not hard to understand, Defendants could not identify Plaintiff or other job applicants' national origin, religion and ethnicity.

29.     In June 2017, Denver Health had 220 advertised positions, as shown in attached Exhibit 15. Forty-three (43) positions (19.5%) out of 220 positions referenced *bilingual* applicants, as shown in attached Exhibit 16. 100% of advertised *bilingual* positions are for Spanish *bilingual*s. Out of 220 positions, hundred-forty-nine (149) positions used key word "*preferred*" in job descriptions, as shown in attached Exhibit 17. Deducting forty-three (43) "*bilingual*" positions (Exhibit 16) from hundred-forty-nine (149) *preferred* positions (Exhibit 17) comes to hundred-six (106) positions (48.2% out of 220 positions) that require *other preferred* qualifications that are not bilingual-related, as shown in attached Exhibit 18. Few examples of other preferred qualifications are Workflow Design/re-engineering, WIC Certification, Advance Health Services Program, State Board of Nursing, and Critical Care Patient Outcomes. Defendants' *language fluency/bilingual* questioning could have been non-discriminatory, if 106 other *preferred qualifications* were also included in Plaintiff's application questions. For example, in addition to language fluency question, Plaintiff should have been asked: are you WIC certified?, Do you have State Board of Nursing Certificate? Are you fluent in Workflow design/re-engineering? Do you have Critical Care experience? Do you have Patient Outcomes experience?, plus other 106 identified *preferred*

COMPLAINT          **P a g e  9 of 26**

*qualifications.* Ignoring 106 Denver Health identified preferred qualifications (based on search

date 6/24/2017), and instead systematically asking 100% of applicants to enter their bilingual

language—in any language—is a deceitful-way to circumvent State and Federal laws prohibiting

questions leading to identify Plaintiff and other job applicants' national origin, ethnic background

and religion.

### First Cause of Action

**42 U.S.C. § 1983—Under color of law, Deprivation of Plaintiff's Due Process and
property interest under the Fourteenth Amendment of U.S. Constitution—Double Standard
hiring process by Systematic Identification of National Origin, Ethnic\Racial and Religion,
under pretext of "Language Fluency/Bilingual" Questioning (Against All Defendants)**

30.     Plaintiff re-alleges and incorporates into this cause of action each and every allegation set

forth in each and every paragraph of this Complaint.

31.     In this Cause of Action, Plaintiff is asserting his loss of property interest under Due Process

violation of Fourteenth Amendment, other than protections covered by Title VII. When Congress

passed the original Title VII, the Senate rejected an amendment that allowed Title VII the only

federal remedy for unlawful employment practice. Id. at 48-49, n. 9, 94 S.Ct. at 1019-20, citing,

110 Cong. Rec. 13650-13652 (1964).  It rejected similar amendment in 1972. "The clear inference

is that Title VII was designed to supplement, rather than supplant, existing laws and institutions

relating to employment discrimination." *Zewde v. Elgin Community College*, 601 F. Supp. 1237,

1247 (N.D. Ill. 1984). *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47-49, 94 S.Ct. 1011,

1019-20, 39 L.Ed.2d 147 (1974), same quoted.

32.     A *language fluent/bilingual* job applicant in Farsi/Persian language, like Plaintiff, with 99%

probability has Iranian national origin, racially white and Muslim. A language fluent/bilingual job

applicant in Amharic language confirms, with 99% accuracy, applicant has Ethiopian national

origin, who is black and Christian. A language fluent/bilingual applicant in Somali language, with

99% accuracy, confirms Somalian national origin, with black skin and Muslim. A language

fluent/bilingual applicant in Swahili language, confirms with 99% probability, applicant is from

one of the eastern or south-eastern African countries, who is for sure black and Muslim. A

language fluent/bilingual Arabic applicant confirms national origin from one of the Middle East

countries with high probability of being Muslim. A language fluent/bilingual in Vietnamese

confirms applicant, with 99% probability has Vietnamese national origin and ethnically Asian. A

Mandarin Chinese language fluent/bilingual applicant confirms China, Taiwan or Hong Kong

national origin and ethnically Asian.

33.    Plaintiff was deprived of his Due Process versus not-bilingual job applicants, when his

national origin was exposed, and ultimately his loss of property interest by refusal to be hired.

Without language fluency/bilingual questioning, Defendants were unable to identify bilinguals'

national origin, race/ethnic or religion information. This hidden double standard in Plaintiff's

hiring process is so obvious to notice its damaging consequence, and Defendants' baseless and

intelligence-insulting justification (Exhibit 2) is further validation of this abusive practice. Plaintiff

presented evidence (Exhibit 15) that less than 20% of Defendants' jobs prefer language

fluent/bilingual, and 100% of those 43 positions are for Spanish language.

34.    Defendants' online bilingual-feature is custom-designed and programmed software that

specifically targets *language fluent/bilingual* job applicants, while subjecting 100% of job

applicants to confirm in what language they are bilingual. Defendants' conduct, in form of online

application system clearly establishes profiling and classifying applicants of other nationalities.

This bilingual classification practice visibly takes place under color of law policies and custom

procedures that violates established statutory and U.S. Constitutional Rights of Plaintiff, by

Denver Health. Defendants' language fluency/bilingual software feature is not an off-the-shelf application like TurboTax software. Defendant's software application design, creation and deployment require multi-department involvement within Defendants' organization from the highest level (Chief Executive Officer, Robin D. Wittenstein) to Information Technology (IT) and Human Resources, each contributing according to expertise and responsibilities for its creation, development, implementation, usage and distribution of collected data back into Defendants' organization. More importantly, the amount of data already collected on bilingual applicants, for number of years, begs the question how such detrimental data related to applicants like in Plaintiff's case used. Such software application could not just appear on its own, without highest direct approval, funding and support in the organization by established policy, procedure and customs. Obstruction-free Discovery allows further substantiation of Plaintiff's allegation. Defendants' current online job application system continues to classify language fluent/bilingual applicants, as direct evidence substantiating Plaintiff's claim that "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

35.    Defendants may refute Plaintiff's bilingual questioning for national origin, ethnic/racial and religion identification, by citing "[l]anguage, by itself, does not identify members of a protected class." *Soberal-Preez v. Heckler*, 717 F.2d 36, 41 (2d Cir. 1983). However, this case has different meaning and applicability than Plaintiff alleging for many specific countries of Middle East and Africa easily identifies national origin, religion and ethnicity, such as Amharic, Somali, Farsi/Persian, Arabic, Ethiopian, Swahili. Defendants may refute Plaintiff's Cause of Action by citing two other cases with identical statement: "Neither the statute nor common understanding equates national origin with the language that one chooses to speak." *Velasquez v. Goldwater* Memorial Hosp., 88 F. Supp. 2d 257, 262 (S.D.N.Y. 20000), which quote *Garcia v. Gloor*, 618

F.2d 264, 268 (5th Cir. 1980). Neither cases remotely apply to Plaintiff specifically referring, in context of job applicants *language fluent/bilingual* questioning for job applicants in Amharic, Ethiopian, Somalian, Swahili, Arabic and Farsi/Persian languages that easily identifies their national origin, ethnicity/race and religion.

36.     Plaintiff's Due Process violation under Fourteenth Amendment caused loss of Plaintiff's property interest, in form of Defendants' refusal to hire Plaintiff, despite Plaintiff's more experience and qualification. Defendants conducts, under *color of law*, culminated to Plaintiff's deprivation of Due Process and loss of property interest manifested in his entitlement to be hired by having much higher experience and qualification than hired candidates. Defendants may refute Plaintiff's property interest by citing "fair consideration for prospective employment" after finding no "Colorado authority recognizing such a property interest." *Lewis v. Department of Health and Hospitality*, 185 F.3d 874, 1999 WL 448814, at *1 (10th Cir. Jul. 2, 1999). Dr. Lewis case is out of context to equate with Plaintiff with actual interview and proven higher qualification.  Unlike Plaintiff, Dr. Lewis never applied for a job and did not have interview. He simply claimed the jobs he was interested in not advertised that he could qualify and apply.

37.     As a local government, Defendants earned liability for Plaintiff's Cause of Actions by exploiting *language fluency/bilingual* cryptic detection to identify national origin, ethnic/racial and religion information. Defendants conducted "a widespread practice that, although not authorized by written law or express municipal policy, is `so permanent and well settled as to constitute a `custom or usage' with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)); see also *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

38.    As the direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer losses in earnings, bonuses, deferred compensation, employment benefits and earning capacity, opportunities for employment advancement, embarrassment, humiliation, mental anguish and distress.

## Second Cause of Action

### 42 U.S.C. § 1983—Under color of law, Deprivation of Plaintiff's Due Process and property interest under the Fourteenth Amendment—Arranged, Bias, Farce and Charade Hiring Panel Interview (Against All Defendants)

39.    Plaintiff re-alleges and incorporates into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

40.    In this Cause of Action, Plaintiff asserts his loss of Due Process and property interest under the Fourteenth Amendment that is other than protections covered by Title VII. When Congress passed the original Title VII, the Senate rejected an amendment that allowed Title VII the only federal remedy for unlawful employment practice. Id. at 48-49, n. 9, 94 S.Ct. at 1019-20, citing, 110 Cong. Rec. 13650-13652 (1964).  It rejected similar amendment in 1972. "The clear inference is that Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination." *Zewde v. Elgin Community College*, 601 F. Supp. 1237, 1247 (N.D. Ill. 1984). *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47-49, 94 S.Ct. 1011, 1019-20, 39 L.Ed.2d 147 (1974), same quoted.

41.    Plaintiff's 30-minute hiring panel interview, and his rejection versus hired candidates epitomizes "*it is not what you know, it is who you know*". Short time before hiring, the 28-year-old hired candidate finishes his internship (Exhibit 13) with the same people who will interview him in two months. The other hired candidate, she graduated of same school (Exhibit 12) that three

hiring panel members were educated and worked before. Per Exhibit 6: "*Mr. Lee created 2 pools of 8 candidates [one for Senior position and one for Junior] to conduct group telephone interviews...*". Defendants had 8 potential candidates for each position, for first 30-minute panel interview. In rudimentary statistics, the probability of each candidate out of eight total candidates to pass first round of interview was 1 out of 8. Equally, each candidate has 12.5% chance of moving on to second phase of interview. In other word, each candidate has <u>87.5% chance of not passing</u> 30-minute interview. From the hired side, this is where Plaintiff alleges hired candidates were able to overcome their 87.5% chance of failing first round of interview, by simply having the inside connection and information for beating 87.5% chance of failure, where Plaintiff was denied such equal access to overcome the odds against him.

42.   Plaintiff's Exhibits 10, 11, 12, 13 established hired individuals and hiring panel members (65% majority—3 out of 5 members) of Plaintiff's interview panel all had relationships prior to 30-minute panel interview. The 34-year-old hired female graduated of same Regis University that three hiring panel members worked before. The 28-year-old hired male candidate, just two months before hiring, finished his six-month internship with the hiring panel department. Hired and hiree's mutual relationships denied Plaintiff's Due Process in a fair and level playing field for the 30-minute interview performance. Given the established relationships, hired individuals benefitted with the inside information about what the interview panel key points that needed more emphasis and pronunciation in the interview.

43.   Plaintiff has more than twice the direct experience than both hired individuals combined. Plaintiff's loss of Due Process and property interest manifested in his right to be hired by the Defendants, based on much higher job qualification, where farce panel interview denied Plaintiff unbiased appraisal. Defendants may refute Plaintiff's property interest by citing "fair consideration

for prospective employment" after finding no "Colorado authority recognizing such a property interest." *Lewis v. Department of Health and Hospitality*, 185 F.3d 874, 1999 WL 448814, at *1 (10th Cir. Jul. 2, 1999). Dr. Lewis case is out of context to equate with Plaintiff successfully passing hiring process, with direct and indirect evidences proving Plaintiff was much higher qualified than two hired individuals. In Dr. Lewis case, he simply claimed the jobs he was interested to apply not advertised and already filled. Plaintiff did apply for two specific positions (Requisition ID: 44376 and 44362) and was interviewed for both positions.

44.     As the direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer losses in earnings, bonuses, deferred compensation, employment benefits and earning capacity, opportunities for employment advancement, embarrassment, humiliation, mental anguish and distress.

### Third Cause of Action

**42 U.S.C. § 1983—Under color of law, Deprivation of Plaintiff's Equal Protection under the Fourteenth Amendment—Unfair Double Standard hiring process by Systematic Identification of National Origin, Ethnic\Racial and Religion for Discrimination and Arranged, Bias, Farce, Charade Hiring Interview Process (Against All Defendants)**

45.     Plaintiff re-alleges and incorporates into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

46.     In this Cause of Action, Plaintiff asserts his loss of Equal Protection under the Fourteenth Amendment that is a protection other than safeguards covered by Title VII. When Congress passed the original Title VII, the Senate rejected an amendment that allowed Title VII the only federal remedy for unlawful employment practice. Id. at 48-49, n. 9, 94 S.Ct. at 1019-20, citing, 110 Cong. Rec. 13650-13652 (1964).  It rejected similar amendment in 1972. "The clear inference is that Title VII was designed to supplement, rather than supplant, existing laws and institutions

relating to employment discrimination." *Zewde v. Elgin Community College*, 601 F. Supp. 1237, 1247 (N.D. Ill. 1984). *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47-49, 94 S.Ct. 1011, 1019-20, 39 L.Ed.2d 147 (1974), same quoted.

47.   In online job application, Defendants did not make any statement that responding to *language fluency* question is optional, which to Plaintiff meant: state in what language you are bilingual.

48.   For Plaintiff and other *language fluent/bilingual* job applicants, Defendants use language as a robust cryptic tool to identify bilingual job applicants' national origin, ethnic/racial and religion, and particularly for <u>Amharic</u>, <u>Somali</u>, <u>Farsi/Persian</u>, <u>Arabic</u>, <u>Ethiopian</u>, <u>Swahili</u> languages. These languages, with 99% accuracy, associate with Middle East and African countries that were/are involve in terrorism. Defendants' *language fluency* questioning is innocent-looking way of obtaining such information solely intended for discrimination against specific nationalities. Defendants know well their language questioning, as they claim, is not intended to match for example, a Somali bilingual who applies for Weight Loss Counselor position to be a match for a needed Somali bilingual Biostatistician. Defendants' baseless, intelligence-insulting and frivolous reasoning on its own is direct evidence of disguising their real motive.

49.   For not-bilingual job applicants, Defendants have no means of identify their national origin, ethnic/racial and religion. This allows not-bilingual applicants have much more objective application review than an applicant like Plaintiff. For example, a hiring manager reviewing a Somali bilingual already knows this applicant for sure is from Somalia, he/she is black and 99% chance of being Muslim. This identification is long before a hiring manager has a chance to talk to this person, or even review his/her resume. For bilingual Amharic, Farsi/Persian, Arabic,

Ethiopian, Swahili, this is devastating for a chance of being hired. Defendants' practice denied

Plaintiff's Equal Protection of the law, under the Fourteenth Amendment.

50.    Plaintiff's Exhibits 10, 11, 12, 13 established hired individuals and hiring panel members

(65% majority—3 out of 5 members) of Plaintiff's interview panel all had relationships prior to

30-minute panel interview. The 34-year-old hired female graduated of same Regis University that

three hiring panel members worked before. The 28-year-old hired male candidate, just two months

before hiring, finished his six-month internship with the hiring panel department. Hired and

hiree's mutual relationships denied Plaintiff's Equal Protection under the law, for a fair and level

playing field 30-minute interview. Hired individuals benefitted from already established

relationships with inside information about interview key points and expectations for successful

interview performance. Defendants' bias and farce hiring process caused Plaintiff loss of his Equal

Protection under the law that culminated to refusal to hire Plaintiff.

51.    As the direct and proximate result of Defendants' conduct, Plaintiff has suffered and

continues to suffer losses in earnings, bonuses, deferred compensation, employment benefits and

earning capacity, opportunities for employment advancement, embarrassment, humiliation, mental

anguish and distress.

### Fourth Cause of Action
**42 U.S.C. § 1983—Under color of law, Deprivation of Plaintiff's Due Process and
property interest under the Fourteenth Amendment—Double Standard for over the age of
40 job applicants, asking: *"Are you over the age of 40?"* (Against All Defendants)**

52.    Plaintiff re-alleges and incorporates into this cause of action each and every allegation set

forth in each and every paragraph of this Complaint.

53.     In this Cause of Action, Plaintiff is asserting his Due Process violation under the Fourteenth

Amendment, other than protections covered by 1967 ADEA and 29 U.S.C. § 621. Plaintiff's

Cause of Action addresses Defendants' elaborate veiled conduct by identifying Plaintiff and other

applicant's age.

54.     Under the pretext of *online assessment test*, Plaintiff was asked "Are you over the age of

40?" with a Yes and No to select from, which Plaintiff selected Yes to confirm he is over the age

of 40.

55.     In Position Statement, Defendants cleverly claim in job application no one is asked if they

are over the age of 40. However, Defendants don't mention this "over the age of 40" question is

asked shuffled among *online assessment test questions*, which Plaintiff had to complete, in order

his application considered for hiring, per Defendants' email, shown as Exhibit 4.

56.     Defendants, under the cover of "online assessment test", subjected Plaintiff to age question

to determine if he is over the age of 40. Plaintiff's Yes response to his age question, classified him

as applicant over the age of 40, which ultimately used against him for hiring and loss of his Due

Process and property interest, by getting hired.

57.     As the direct and proximate result of Defendants' conduct, Plaintiff has suffered and

continues to suffer losses in earnings, bonuses, deferred compensation, employment benefits and

earning capacity, opportunities for employment advancement, embarrassment, humiliation, mental

anguish and distress.

**Fifth Cause of Action**

**Age Discrimination—refusal to hire Plaintiff with respect to his age,**

**Age Discrimination in Employment Act of 1967— 29 U.S.C. § 621 to 29 U.S.C. § 634,**

**(Against All Defendants, Except in Individual Capacities)**

58.     Plaintiff re-alleges and incorporates into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

59.     To determine Plaintiff is over 40 year old, Defendants, under the cover of *online assessment testing,* asked Plaintiff "*Are you over the age of 40?*" Plaintiff with Yes response confirmed he is over the age of 40 job applicant.

60.     For this Cause of Action Plaintiff establishes "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

61.     With attached Exhibits, as direct and circumstantial evidence, Plaintiff establishes his four-elements prima facie of age discrimination.  (1) 54-year-old Plaintiff is over the age of 40 in protected class. (2) Plaintiff was well qualified for the two applied positions versus hired candidates with much less experience. (3) That there was an adverse employment action, in form of refusal to hire Plaintiff, and (4) that direct and circumstantial evidence of record supports the inference of improper motivation for Plaintiff's age discrimination.

62.     For first prima facie element, Plaintiff's is 54 year old and qualifies as a protected class.

63.    For second element, Plaintiff's has much higher combined direct experience than both hired candidates.

64.    For third element of prima facie, Plaintiff is still suffering the adverse employment action by Defendants' refusal to hire Plaintiff for perfectly qualified matched positions.

65.    For fourth element of prima facie, hired candidates are 28 and 34 year-old, reporting to 40 year-old manager, Defendant, Jeremy Lee—14 years younger than Plaintiff (Exhibit 7).

66.    Plaintiff's Exhibits 10, 11, 12, 13 established hired individuals and hiring panel members (65% majority—3 out of 5 members) of Plaintiff's interview panel all had relationships prior to 30-minute panel interview. The 34-year-old hired female graduated of same Regis University that three hiring panel members worked before. The 28-year-old hired male candidate, just two months before hiring, finished his six-month internship with the hiring panel department. Hired and hiree's mutual relationships denied Plaintiff's Equal Protection under the law, for a fair and level playing field 30-minute interview. Hired individuals benefitted from already established relationships with inside information about interview key points and expectations for successful performance. Defendants' bias and farce hiring process caused Plaintiff loss of his Equal Protection under the law that culminated to refusal to hire Plaintiff.

67.    As the direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer losses in earnings, bonuses, deferred compensation, employment benefits and earning capacity, opportunities for employment advancement, embarrassment, humiliation, mental anguish and distress.

## Sixth Cause of Action

### Discrimination, Refusal to Hire Plaintiff with Respect to National Origin, 42 U.S.C. § 2000e-2(a)(1), (Against All Defendants, Except in Individual Capacities)

68.     Plaintiff re-alleges and incorporates into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

69.     For this Cause of Action, Plaintiff provides "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

70.     With attached Exhibits, as direct and circumstantial evidence, and statement in this Complaint, Plaintiff establishes his "prima facie case of national origin discrimination is comprised of the following four elements: (1) the employee [job applicant, Plaintiff] is a member of a protected class [Iranian national origin] (2) That he is qualified for the relevant positions, (3) that there was an adverse [refusal to hire Plaintiff] employment action, and (4) that some [direct and circumstantial] evidence of record supports the inference of improper motivation [national origin discrimination]". *Hannoon v. Fawn Eng'g Co.*, 324 F.3d 1041, 1046 (8th Cir.2003).

71.     Plaintiff asserts that his prima facie proving has low bar to meet, since Courts have noted that the requirements of proving a prima facie case of discrimination based upon national origin are de minimus. In analyzing whether a plaintiff has failed to meet the prima facie showing of discrimination, the courts have reiterated that the burden of making out a prima facie case is "not onerous." *Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Rivera-Aponte v.*

*Restaurant Metropol # 3, Inc.*, 338 F.3d 9, 11 (1st Cir.2003) ("not burdensome"); *Zapata-Matos v. Reckitt & Colman, Inc.*, 277 F.3d 40, 44 (1st Cir.2002) ("low prima facie showing"); *Villanueva v. Wellesley College*, 930 F.2d 124, 127 (1st Cir.1991) ("quite easy to meet"). "Under this standard, Diaz has proffered sufficient prima facie evidence of failure to hire based on racial and/or national origin discrimination." *Diaz v. Ashcroft*, 324 F.Supp.2d 343, 347 (D. Puerto Rico,2004).
*Velez v. Project Renewal*, 2003 WL 402500, *3 (S.D.N.Y.,2003)) ("The proof a plaintiff is required to present at this stage is minimal. Id.; *De La Cruz v. New York City Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir.1996).").

72.    For first element of Plaintiff's prima facie, his Iranian national origin qualifies him as a protected class/group that was identified by Defendants *language fluency* questioning.

73.    For second element of prima facie, Plaintiff has much higher direct experience and qualification than hired individuals. Plaintiff substantiated his statement of "*it is not what you know, it is who you know*" by statistical probability. Short time before hiring, the 28-year-old hired candidate finishes his internship (Exhibit 13) with the same people who will interview him two months later. The other hired candidate, she graduated of same Regis University (Exhibit 12) that three hiring panel members were educated and worked before (Exhibits 10, 11). Per Exhibit 6: "*Mr. Lee created 2 pools of 8 candidates [*one for Senior position and one for Junior*] to conduct group telephone interviews...*". Defendants had 8 potential candidates for each position, for 30-minute panel interview. In rudimentary statistics, the probability of each candidate out of eight candidates to pass first round of interview is 1 out of 8 or 12.5% chance of moving on to second phase of interview. In other word, each candidate had 87.5% chance of not passing the 30-minute interview. Plaintiff alleges hired candidates acquired interview performance enhancement in form of inside connection and information allowed them to overcome 87.5% chance of failure.

74.     For third element of prima facie, Plaintiff is still suffering of adverse employment action by Defendants' refusal to hire Plaintiff, for perfectly qualified and matched positions.

75.     For fourth element of prima facie, Plaintiff's Exhibits 10, 11, 12, 13 established hired individuals and hiring panel members (65% majority—3 out of 5 members) of Plaintiff's interview panel all had relationships prior to 30-minute panel interview. The 34-year-old hired female graduated of same Regis University that three hiring panel members worked before. The 28-year-old hired male candidate, just two months before hiring, finished his six-month internship with the hiring panel department. Hired and hiree's mutual relationships denied Plaintiff's fair and level playing field 30-minute interview. Hired individuals benefitted from already established relationships with inside information about interview key points and expectations for successful performance. Defendants' bias and farce hiring process was only intended to have the appearance of a legitimate hiring process.

76.     In Exhibit 6, Defendants' Position Statement confirms Defendant Jeremy Lee was the person who reviewed all applications for interview. This confirms Defendant knew Plaintiff's national origin, with Plaintiff's bilingual confirmation in Farsi/Persian. With Exhibit 10, Plaintiff established that prior to working at Denver Health, for years, Jeremy Lee and Sharif Abdelhamid were friends and colleagues at Regis University. Given the friendship between the two and Sharif Abdelhamid, who is American with Arab-Egyptian heritage, Plaintiff alleges his national origin worked against his hiring.

77.     As the direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer losses in earnings, bonuses, deferred compensation, employment benefits and

earning capacity, opportunities for employment advancement, embarrassment, humiliation, mental anguish and distress.

## **Prayer for Relief**

WHEREFORE, Plaintiff prays that this Court enter judgment in favor of Plaintiff and against Defendants as follow:

1. For First Cause of Action: issue a judgment declaring that the acts of the Defendants—violated Plaintiff's Due Process and loss of property interest under the Fourteenth Amendment of U.S. Constitution;

2. Issue an injunction ordering Defendants stop asking job applicants if they have language fluency or if they are bilingual in any languages;

3. For Second Cause of Action: issue a judgment declaring that the acts of the Defendants violated Plaintiff's Due Process and loss of property interest under the Fourteenth Amendment, for arranged, bias, farce and charade hiring panel interview;

4. For Third Cause of Action issue a judgment declaring Defendants  violated Plaintiff's Equal Protection under the Fourteenth Amendment by double standard hiring process and systematic identification of national origin, ethnic\racial and religion for Discrimination;

5. For Fourth Cause of Action issue a judgment declaring Defendants violated Plaintiff's Due Process and property interest under the Fourteenth Amendment, by identifying Plaintiff as over the age of 40 job applicant—asking Plaintiff *"Are you over the age of 40?"*;

6. For Fifth Cause of Action: Issue a judgment declaring Defendants committed age discrimination against the Plaintiff, in violation of Age Discrimination in Employment Act of 1967— 29 U.S.C. § 621 to 29 U.S.C. § 634;

7. For Sixth Cause of Action: Issue a judgment declaring that Defendants discriminated to hire Plaintiff because of his national origin, in violation of 42 U.S.C. § 2000e-2(a)(1);

8. For compensatory damages and consequential damages to be awarded to Plaintiff according to proof at trial;

9. For exemplary and punitive damages to be awarded to Plaintiff according to proof at trial;

10. For interest;

11. For costs of suit and attorney fees; and

12. For such other and further relief as the Court may deem just, proper, and appropriate.

### Demand for Jury Trial

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury for all the issues pleaded herein so triable.

Dated: July 18, 2017          By: _____
Aurora, Colorado
                              Alireza Vazirabadi, Plaintiff, Pro Se
                              avazirabadi@yahoo.com
                              843 Vaughn Street
                              Aurora, CO 80011
                              720-218-4769

EEOC Form 161 (1/08)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Alireza Vazirabadi
843 Vaughn Street
Aurora, CO 80011

From: Denver Field Office
303 East 17th Avenue
Suite 410
Denver, CO 80203

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 541-2016-02319 | Christopher D. Padilla, Supervisory Investigator | (303) 866-1341 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC

[ ] Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[x] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge

[ ] Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** from your receipt of this Notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

On behalf of the Commission

MAY 0 4 2017

Enclosure(s)

Elizabeth Cadle,
**District Director**

*(Date Mailed)*

cc      DENVER HEALTH MEDICAL CENTER

# Exhibit 1

## 👤🏷️ Vazirabadi, Alireza Alireza (148645) - Lean Facilitator (44362)

---

**Profile Criteria**

---

| | |
|---|---|
| **Database Entry Method:** Online Application | **Source:** Internet Job Board |
| **Specific Entry Method:** External | **Specific Source:** Denver Health website |
| **Work Availability:** | **Additional Source Information:** Indeed.com |
| **Available Start Date:** 7/25/2016 | **Employment Type Desired:** Full-Time, Part-Time |
| **Fluent Languages:** English, Farsi (Persian) | **Consent Statement:** Agree |
| **Perform Essential Functions:** Yes | **Desired Salary:** Negotiable |
| **Work Restriction Details:** | **Preferred Entities:** |
| **Accommodations:** | |
| **Candidate Application Notes:** | |
| **Created On:** Friday, July 08, 2016 12:56:22 PM | **Modified On:** Friday, July 08, 2016 2:26:39 PM |
| **Created By:** SYSTEM SYSTEM | **Modified By:** Integration User |
| **Pre-Offer Date Sent:** 7/8/2016 | |

---

**Candidate Questionnaires**

---

| Name of Questionnaire | Score | Grade | Date Sent | Response Received | Outcome |
|---|---|---|---|---|---|
| | | | | | |

---

**Work History**

**ATTACHMENT 1**

 

# Exhibit 2

and neither of these factors played a part in the decision to not hire Mr. Vazirabadi for the Lean positions.

### III. <u>Response to Allegations in the Charge</u>

Below is Denver Health's response to the specific allegations made by Mr. Vazirabadi in his Charge.

*A.    In July 2016, I applied online for the vacant position of Lean Facilitator (Req. ID 44362) and Lean Coordinator (Req. ID 44376).*

<u>Denver Health's Response</u>:  Denver Health does not dispute that Mr. Vazirabadi applied for the advertised positions of Lean Facilitator and Lean Coordinator through Denver Health's online application website in early July 2016.

*B.    Among the questions asked by Denver Health's online application process was if I was over the age of 40 and if I speak any foreign languages.*

<u>Denver Health's Response</u>:  Denver Health did <u>not</u> ask Mr. Vazirabadi if he was over the age of 40 during the online application process.  Denver Health asks whether an applicant is at least 18 years old and the question only requires either a "yes" or "no" response – it does not ask for an individual's age.  Given the restrictions placed on employing individuals under the age of 18, this is a valid and legal question for Denver Health to ask during the application process.  During the online application process, Mr. Vazirabadi was asked to list any language(s) he spoke fluently, but completion of this question was not required to move through the application process.  Denver Health offers this question, because at times the organization may have a job position for which "bilingual" is a preferred qualification and this question allows applicants to submit this information during the online application process.  With respect to the Lean positions Mr. Vazirabadi applied for, being able to speak another language was not a qualification and completion of this question was not taken into consideration when vetting candidates.

*C.    Although I was interviewed for both the above-mentioned positions, Denver Health selected a younger less qualified candidate for the position. I believe I have been discriminated against because of my national origin (Iran) in violation of Title VII of the Civil Rights Act of 1964, as amended. Furthermore, I believe I have been discriminated against because of my age (53) in violation of the Age Discrimination in Employment Act of 1967, as amended.*

<u>Denver Health's Response</u>:    Denver Health disputes that the candidates ultimately hired for the position of Lean Facilitator and Lean Coordinator were less qualified then Mr. Vazirabadi.  The candidates hired into their respective roles gave concrete examples of previous experience during the behavioral

3

# Exhibit 3

AVazirabadi    Account Info

| Inbox | Contacts | Notepad | Calendar |

Switch to the newest Yahoo Mail

Compose

Delete   Reply   Reply All   Forward   Actions      [Apply]   Back to Search Results

**Inbox (1381)**

**Drafts (34)**

Sent

Spam            [Empty]

Trash           [Empty]

**My Folders**        [Edit]

   ⊘  www.roberthalf....    **Administrative Recruiters - Hire Admins in ...**        Sponsored

**Important Denver Health Notification - Please re**        Friday, July 8, 2016 1:56 PM
**ad below**

From:   "Denver Health Recruitment" <recruitmentnoreply@dhha.org>

To:   avazirabadi@yahoo.com

Raw Message Printable View

Dear Alireza Vazirabadi,

Thank you for your interest in Denver Health.  Your application has been submitted and received.

Thank you!

Recruitment Center

Compose           Delete   Reply   Reply All   Forward   Actions      [Apply]   Back to Search Results

# Exhibit 4

AVazirabadi    Account Info

| Inbox | Contacts   Notepad   ·   Calendar | Switch to the newest Yahoo Mail |

Compose                    Delete   Reply   Reply All   Forward   Actions   [ Apply ]   Back to Search Results

**Inbox (1381)**

**Drafts (34)**            🖾   www.roberthalf....    **Administrative Recruiters - Hire Admins in ...**          Sponsored

Sent                       **Action Required-Denver Health Applicant Next**          Friday, July 8, 2016 1:57 PM
                           **Steps**

Spam          [Empty]      **From:**   "Denver Health Recruitment" <recruitmentnoreply@dhha.org>

Trash         [Empty]       **Cc:**   avazirabadi@yahoo.com

                                                                                          Raw Message Printable View

**My Folders**    [Edit]

                           Dear Alireza Vazirabadi,

                           "Thank you for your interest in career opportunities at Denver Health!  So what is the next step? In
                           order for your application to be reviewed by the hiring manager and you to be considered for a
                           position at Denver Health, it is necessary for you to complete an online assessment .  It is important
                           that you complete the assessment in an environment that is quiet and free from distractions.  Please
                           allow approximately 35-55 minutes to complete the assessment."

                           Technology Requirement: The assessment must be taken on a PC. A smart phone or a tablet is not
                           recommended. Specific requirements are listed once you click the link.

                           When you apply to other positions you may receive this email. Different positions may require
                           different assessments. Clicking on the link each time you receive it will confirm completion of an
                           assessment, or notify you of a specific assessment that needs completion. Once you have clicked on
                           the link to verify that you have completed the required assessment for the position your application
                           will be reviewed.

                           To take the assessment, please click the following link:

                           https://www.select2perform.com/default?action=sessionlogin&sid=571585658856301448&dm=ws

                           (When you click on the link, please note that some e-mail systems may not be able to properly
                           activate a link which wraps onto multiple lines.  Should this occur, simply copy the link from this
                           message, and paste it into the Address bar in your browser).

                           Thank you,

                           Denver Health Recruitment

Compose                    Delete   Reply   Reply All   Forward   Actions   [ Apply ]   Back to Search Results

 

# EXHIBIT 5

- The applicant's name, address, phone, email and preferred method of contact
- Applicant's desired employment type (full time/part time) and shift
- Applicant's highest level of education completed
- Any Certification/Licenses they hold
- If the applicant was previously employed by Denver Health and if so provide an explanation and dates
- Whether the applicant has any relatives employed at Denver Health
- Whether the applicant has been convicted of a felony, if so explain
- The applicant's years of direct experience they have for the job applying for
- Whether the applicant is eligible to work in the U.S. and whether visa sponsorship is required
- Whether the applicant is at least 18 years old
- The applicant's work history
- The applicant's education; and
- The applicant's references

As indicated above and evidenced on **Attachment 1**, Denver Health does **not** ask applicants if they are over the age of 40. Furthermore, as previously explained, Denver Health does invite applicant's to list any language(s) they speak fluently because at times the organization may have a job position for which "bilingual" is a preferred qualification and this question allows applicants to submit this information during the online application process. Answering the language question is not required to move through the application process and is only taken into consideration if applicable to the position.

Attached as **Attachment 1** is a printout of Mr. Vazirabadi's online application sheets which contain the questions (and answers) he provided as he went through the online application process for the Lean Facilitator position as well as the cover letter and resume he uploaded with his application. Also, **Attachment 2** is a copy of the online job advertisement for the Lean Facilitator position and **Attachment 3** is a copy of the Lean Facilitator job description in effect on July 1, 2016.

4.  Submit a detailed list of each online question Respondent asked applicants for the position of Lean Coordinator identified in the charge. Also, submit the following:
    a.  Explain, in detail, why Respondent would ask if an applicant is over 40 years of age?
        Submit all documentation to support your answer.
    b.  Explain, in detail, why Respondent asks what other languages an applicant speaks?
        Submit all documentation to support your answer.
    c.  Submit a true and complete copy of the job advertisement.

 

# EXHIBIT 6

**II.    Mr. Alireza Vazirabadi's Application for Employment with Denver Health**

The Charging Party applied for two different open positions at Denver Health in early July 2016 – the Lean Coordinator role and the Lean Facilitator role, both of which are part of Denver Health's Lean[1] Systems Improvement Department. While the Lean Facilitator role required more experience and skill in implementing Lean strategies, because the positions overlapped in skills and knowledge applicants were looked at as potential candidates for either position during the selection process.

Both positions report to Lean Assistant Director Jeremy Lee[2] who led the selection process. After reviewing the online application submissions, Mr. Lee created 2 pools of 8 candidates to conduct group telephone interviews with. All candidates that received a first round group interview were told that they would be considered for both positions and all candidates were asked the same behavioral based interview questions, as follows:

- *What draws you to Denver Health? What do you find compelling about working at this organization?*
- *What does Lean mean to you?  How would you describe a "lean enterprise"?*
- *What is your specific experience facilitating groups?*
- *Give us an example of when you dealt with resistance in a group, how did you handle it?*
- *What is your experience/comfort working with staff at all levels of the organization?*
- *Tell us about your experience with tracking deliverables for a specific project, including the data that supported progress related to that project.*

Mr. Vazirabadi was selected for a first round group telephone interview in the Lean Facilitator pool.  Mr. Lee along with Scott Pegues, *Lean Coordinator*; Hanna Andress, *Project Administrator*; Carol Ann Kelly, *Lean Facilitator* and Sharif Abdelhamid, *Lean Facilitator* conducted a group telephone interview with Mr. Vazirabadi during which the group rotated asking him the behavior-based interview questions listed above.  While on paper Mr. Vazirabadi had listed experience in Lean processes and was thought to be quite personable during the interview, he did not speak well to the interview questions and failed to provide solid examples of past experiences when responding to the questions.  As a result, Mr. Vazirabadi was not selected to move on to the second round of interviews.   Contrary to Mr. Vazirabadi's allegations, Denver Health had no knowledge of Mr. Vazirabadi's age or national origin during the selection process

---

[1] Lean is a systematic approach of continuous improvement, based on the Toyota Production System (TPS) of LEAN principles and LEAN tools, used for the identification and elimination of waste.

[2] Mr. Lee was 1 of 2 hiring managers.  Mr. Lee made his recommendation for hires for each position to his boss Elizabeth Fingado *(Caucasian; Age 53)*, the Director of the Leans Systems Improvement Department, who made the final hiring decision.

 

# EXHIBIT 7

e. Explain, in detail, why the successful candidate was selected for the position of Lean Coordinator. Submit all documentation to support your answer.

**Response:** Jeremy Lee *(Caucasian; Age 40)*, Lean Assistant Director, was responsible for selecting candidates to go to the first round of interviews. The initial interview pool was selected by reviewing the application materials submitted for whether applicants met the minimum qualifications and then the focus was on the applicant's facilitation, lean, project management, teaching, healthcare and data experience. Due to privacy concerns, Denver Health will not be providing the names and personal information of the eight individuals selected for first round interviews for the Lean Coordinator position at this time. Denver Health is providing the information on the candidate ultimately selected for the position, which should provide the agency with the documentation to support the decision; however if additional information is needed, please feel free to contact me directly. The Denver Health employees who participated in interviews for the Lean Coordinator candidates were as follows:

- Jeremy Lee *(Caucasian; Age 40)*, Lean Assistant Director
- Scott Pegues *(Black or African American; Age 45)*, Lean Coordinator
- Hanna Andress *(Caucasian; Age 26)*, Project Administrator
- Carol Ann Kelly *(Caucasian; Age 50)*, Lean Facilitator
- Lindsay Beaudry *(Caucasian; Age 33)*, Lean Facilitator

The Lean Coordinator role involves coordinating activities for Lean System Improvement events and facilitating small group meetings. As such, for this role Denver Health was looking for candidates that had strong project management skills and also had some experience facilitating or training small groups. As stated above, Mr. Vazirabadi did not present as a candidate that possessed strong facilitating, interpersonal, and people skills.

In contrast, Mr. Agustin Leone *(Hispanic; Age 28)*, the candidate that was offered and accepted the role of Lean Coordinator has coordinator experience working and training people and also had experience through his various internships coordinating in a healthcare setting. A copy of Mr. Leone's resume submitted for the Lean Facilitator opening is attached as **Confidential Attachment B.** Furthermore, Mr. Leone gave specific examples during his interview regarding times when he facilitated groups and dealt with resistance in groups. Overall, Mr. Leone's skills and experience made him a better qualified candidate than Mr. Vazirabadi for the role of Lean Coordinator.

7. Submit the age demographics for Respondent's facility named in the charge as of July 30, 2016.

**Response:** As of July 30, 2016, the number of employees age 40 and over was 3038 (44%), and the number of employees under age 40 was 3848 (56%).

http://www.denverpost.com/2016/03/13/why-are-so-many-doctors-leaving-denver-health/

**EXHIBIT 8**

The memo circulated about 10 days ago by Gonzalez and Dr. Bill Burr the medical staff, announced "a decisive plan" to deal with recent events. It ended a controversial new payment plan for doctors.

Its elements also included neurosurgery coverage from the university, a promise to work with doctors "to reformulate the physician leadership structure at Denver Health" and to eliminate the job of Bellian, who had been given wide latitude to manage the hospital.

The memo blamed "problems inherent in the way that role was structured."

Bellian declined to comment.

Colwell, who is leaving Denver Health for San Francisco General Hospital, said the medical staff went to Gonzalez to discuss "finding ways to work together and focusing on our mission and values," including Bellian's elevated authority. "Certainly a fair part of the staff wondered if that should be part of the structure," he said.

He predicts Denver's venerable hospital will emerge from its current challenges as a healthy institution.

"I think the future of Denver Health is very bright," he said.

Moore said he is not worried that the hospital will change its fundamental mission of top-quality care for all.

But he said that scheduling surgeries has become an issue, particularly for patients who need more than one.

"That's where the frustration arises," he said. "One of the problem areas is access to the operating rooms for secondary operations."

Gonzalez responded that "there has been no reduction in operating room space or capacity," but "if we are inundated with trauma or urgent surgeries, elective surgeries sometimes have to be delayed or rescheduled."

Hospital officials say they are close to hiring a new chief of surgery.

David Olinger: 303-954-1498, dolinger@denverpost.com or @dolingerdp



### David Olinger

David Olinger is an investigative journalist who has worked for newspapers in New Hampshire, Florida and Colorado since 1976. In 18 years in Colorado, he has covered a variety of subjects for The Denver Post.

Follow David Olinger @dolingerdp

# EXHIBIT 9

AVazirabadi        Account Info

Inbox    Contacts    Notepad    Calendar

Switch to the newest Yahoo Mail

Compose                    Delete    Reply    Reply All    Forward    Actions        Apply    Back to Search Results

**Inbox (1382)**                        www.whitepage...    We Found John Smith - Current Phone, Add...            Sponsored

Drafts **(34)**

**RE: Lean Position**                                Wednesday, August 3, 2016 7:27 AM

Sent

From:  "Lee    Jeremy" <Jeremy.Lee@dhha.org>

Spam            [Empty]        To:  "'AVazirabadi'" <AVazirabadi@yahoo.com>

Trash            [Empty]        Cc:  "Lee    Jeremy" <Jeremy.Lee@dhha.org>

Raw Message Printable View

**My Folders**        [Edit]

Ali,

I regret to inform you that we have moved forward in the process with other highly
qualified candidates. We really enjoyed the phone interview with you and wish you nothing
but success in your professional endeavors.

Sincerely,

Jeremy

# EXHIBIT 10

https://www.youtube.com/watch?v=_Wr-JIvm9LU



An Introduction to Service Learning in the Health Professions

RHCHPCSL

1,800 views

Published on Jul 10, 2012

This short video provides students and faculty at the Rueckert-Hartman College for Health Professions at Regis University with an introduction to service learning pedagogy. Perspectives from students and faculty across the health professions disciplines are shared to give insight into

https://www.linkedin.com/in/carol-ann-kelly-40687310/

published revised versions of our **Privacy Policy** and our **User Agreement**. Your continued use of Li **EXHIBIT 11** se revise minutes to read and understand them. Visit the **LinkedIn blog** to learn what these changes mean to you.

enterprise. I work in partnership with various stakeholders to develop lean strategies and ensure adherence to Denver Health Lean Systems Improvement Department standard work and principles of lean thinking. I work on a team that specializes in areas of advanced lean facilitation such as Hoshin planning or in support of complex strategic task forces.

More specifically my time is allocated across: improvement coaching, strategic taskforces/catchball, specialized produce line lead, developing and delivering education, monitoring/measuring/tracking improvement metrics, documentation and administrative work and support onboarding of new staff.

Not familiar with Lean Management? Implementing lean management enables a company to establish a                Le
sense of direction and create corporate objectives. Implementing lean systems enables a company to
eliminate processes that do not offer value and track improvement via a set of reliable metrics. This form
of management allows company executives to have a clear picture of what is working correctly for the
company and what areas are in need of changes.

Read more: "The Toyota Way: 14 Management Principles from the World's Greatest Manufacturer" by Jeffrey K. Liker

### Assistant Director of Service Learning, RHCHP, Regis University
**Regis University**
Jun 2014 – Nov 2014  • 6 mos
Greater Denver Area



### Associate Director of Service Learning, CPS
**Regis University**
Jan 2011 – May 2014  • 3 yrs 5 mos

As a Regis Graduate, returning to Regis is something I am very excited about. In a world where we are encouraged to live the dream - that of personal prosperity and success, it is refreshing to me that Regis provides the resources of education to students, ensuring academic excellence and professional success, while retaining the emphasis on the personal transformation that takes place when students ask themselves, "How ought we to live?"

My role is to assist faculty and students with the important balance of educational preparation and community awareness so that Regis students can be propelled into a long life of service to individuals and transformative involvement in their respective communities. Regis' education and values combine academic excellence with leadership, ethical decision-making, social justice and global awareness. The goal of this position is to integrate service learning in various courses; which combines working with faculty, students and community partners to create a laboratory for students to bring books to life in a real time situation.

### Director of Adult Education and Parent Involvement
**Goals, Inc**
Oct 2008 – Nov 2010  • 2 yrs 2 mos

October 2008 Present / Director of Adult Education and Parent Involvement
Responsibilities:
· Management of three semesters of adult education for the families served by Goals, Inc.
Selecting classes and curriculum (ESL, Finances, Communication, GED, Citizenship), hiring
teachers, collaborating with partnerships to advance the education op｜ Messaging      ✎ ⚙ —

# EXHIBIT 12

- Researched new client potential and opportunities with exploration and production companies to maximize new business acquisition activities.
- Conducted research on topics related to energy bills and other legislative issues for leadership reporting.

**Land Technician Supervisor,** Pioneer Natural Resources USA, Inc., Denver, CO                    2008-2010
- Optimized profitability by negotiating contracts with landowners for a mid-size natural gas company.
- Sustained client relations and oversaw operation of natural gas well sites across Southern Colorado.
- Served as primary contact and corporate liaison for 200+ clients to ensure a positive client relationship.
- Implemented and maintained management project tracking databases (in-house ERP software) to improve traceability and transparency.
- Gathered and developed materials for briefings, presentations and conferences with top management to streamline workflow.
- Supervised daily activities of 4 land technicians to ensure maximum efficiency.
- Executed contracts through verbal and written negotiations with clients with a focus on optimal revenue gains.
- Coordinated with multiple departments to ensure seamless project operations.
- Represented company and top management in regular, publicly held meetings as SME.

**PREVIOUS WORK HISTORY:**
**Engineering Process Analyst,** Pioneer Natural Resources USA, Inc., Trinidad, CO/Denver, CO, 2007-2008
**Land Technician I,** Pioneer Natural Resources USA, Inc., Denver, CO. 2005-2007

## EDUCATION

**Masters of Business Administration, Emphasis on Marketing,** Regis University – College for Professional Studies
**Bachelor of Arts in Kinesiology,** University of Colorado at Boulder

## COMMUNITY RELATIONS

**Volunteer,** American Lung Association, Washington DC, 2010-2013 | **DC Buffs Member,** University of Colorado Alumni Association, Washington DC, 2010-2012 | **Leadership Council Member/Director of Activities,** American Lung Association, Denver, CO, 2000-2010

Agustín Leone   **EXHIBIT 13**

## Internships

| | |
|---|---|
| **Denver Health Medical Center. Lean Systems Improvement** | **Dec 2015 – May 2016** |

- MPH Capstone Project: Multi-case study examining factors that influence the implementation of A3 problem solving
- Developed interactive map of visual management boards throughout the organization
- Conducted time and observational studies in Denver Health clinics
- Aggregated and analyzed patient satisfaction data (HCAHPS) to prioritize quality improvement efforts

| | |
|---|---|
| **Colorado Department of Public Health and Environment. Operations** | **Sept 2015 – Mar 2016** |

- Supported development of MS SharePoint/InfoPath solution to enhance efficiency and data capture for procurement requests
- Coordinated with business process owners to design and implement solution

| | |
|---|---|
| **Denver Children's Advocacy Center. Access to Health Program** | **Jan 2011 – May 2011** |

- Promoted health services provided by center at community events
- Certified in application assistance for Medicaid and CHP+

| | |
|---|---|
| **Perform-X Athletic Training Facility. Personal Trainer** | **Sept 2010 – Dec 2010** |

- Sports specific trainer (hockey, basketball, football and soccer)

| | |
|---|---|
| **Triple Crown Sports. Lodging Department/Ticket Sales** | **Sept 2009 – Dec 2009** |

- Managed on-line database for tournament bookings
- Sold packages for NCAA preseason basketball tournament

| | |
|---|---|
| **Colorado State University Adult Fitness Program.** | **Jan 2009 – Dec 2009** |
| **Personal Trainer/Cardiac Rehab** | |

- Created exercise programs for clients with health conditions

## Points of Pride

**Academic:**

| | |
|---|---|
| • Delta Omega Public Health Honor Society | **May 2016** |

**Volunteering:**

| | |
|---|---|
| • DCAC Annual Fundraising Events | **2004 – Present** |
| • Dawg Nation Hockey Foundation (Player Ambassador) | **2012 – Present** |

**Sports:**

| | |
|---|---|
| • Accomplished hockey player. Played AA divisions | **1996 – Present** |
| • Colorado State University Rugby Player | **Sept 2007 – Apr 2008** |

**Certifications:**

| | |
|---|---|
| • Hospital Lean Leadership | **Mar 2014** |
| • Hospital Lean Management Systems | **Feb 2016** |
| • Adult CPR and AED | **2009 – Present** |

**Language:**

- Spanish (Native of Argentina)

In all her career in health care management, says Patricia Gabow, Denver Health's chief executive officer (CEO), "I've never seen anything this powerful."

## Health Care Systems' Embrace Of 'Lean' **EXHIBIT 14**

With hospital and physician leaders facing growing pressure to control costs and improve the quality of health care, it's little wonder that a growing number of health systems are embracing Lean. ThedaCare in Wisconsin[1] and Virginia Mason Medical Center,[2] Group Health Cooperative,[3] and Seattle Children's Hospital[4] in Seattle, Washington, have emerged as national leaders in the movement. Other hospital systems such as Massachusetts General in Boston and Emory Healthcare in Atlanta, Georgia, are using Lean as one approach in a broader arsenal of performance improvement methods. Others seem likely to follow as state Medicaid funding cuts kick in, and as the Patient Protection and Affordable Care Act puts new constraints on Medicare payments.

It takes leadership for systems to go Lean, and in Denver Health's case, the inspiration came from Gabow. Now 66, she's a nephrologist who has worked at Denver Health for 37 years—as a clinician, department chief, medical director, and then CEO for the past 18 years. Over that period, Denver Health has grown into a teaching institution that also runs the city's paramedic system, twenty outpatient and school clinics, the regional poison control center, the city's public health department, and Medicare and Medicaid managed care plans. Yet within the past decade, Gabow says, she had grown "frustrated that the medical community was doing things the same way as forty years ago. It was irrational."

In 2003 Gabow applied for and received a federal planning grant to improve patients' experiences of care at Denver Health. She organized study visits to manufacturing and service companies using Lean tools in the United States and Denmark. The hospital also conducted focus groups with employees and surveyed patients.

Around the same time, Gabow hired an industrial engineer, who mapped some of the hospital processes. One stunning finding was that trauma surgery resident physicians walked eight and a half miles in the course of a single twenty-four-hour shift. "Tell me," Gabow recalls saying in horror, "this isn't what we do."

So Gabow and her leadership team turned to Lean, a system derived from the work of American quality expert W. Edwards Deming[5] and used successfully by Toyota, Dell, FedEx, and other leading companies. (They chose Lean over an alternative performance improvement model, Six Sigma, because Gabow and her colleagues found it easier for everyone to understand.)

## Eliminating Waste, Maximizing Value

Management experts estimate that up to half of the expenses of running a health care system are unnecessary.[6] As a management discipline, Lean aims to eliminate this waste in production processes and maximize value to customers. Although typically mandated by top management, Lean projects are planned and carried out by line workers themselves, requiring continuous, rather than one-time, efforts to improve processes.[7] That contrasts with the traditional approach in medical organizations, which tend to be institutions run from the top down. "We've tended to work on the model of individual perfection—that you can

https://www.indeed.com/jobs?as_and=&as_phr="denver+Health"&as_any=&as_not=&as_ttl=&as_cmp=&jt=all&st=employer&salary=&radius=25...

Find Jobs | Company Reviews | Find Salaries | Find Resumes | Employers / Post Job | Upload your resume | Sign i

**what**

"denver Health"

job title, keywords or company

**where**

Denver, CO

city, state, or zip

# EXHIBIT 15

Find J

**denver Health jobs in Denver, CO**

Upload your resume - Let employers find you

Jobs 1 to 10 of 220

Be the first to s "denver Healt Denver, CO

Recommended Jobs - 102 new

My recent searches

bilingual "denver health" - Denver, CO

bilingual "denver Health" - Denver, CO

Preferred "denver Health" - Denver, CO

prefered "denver health" - Denver, CO

bilingual bilingual "denver heal... - Denver, CO

bilingual "denver health" biling... - Denver, CO

"denver health" - Denver, CO

"denver health" language fluency - Denver, CO

"denver health" fluency - Denver, CO

» clear searches

Sort by: **relevance** - date

**Distance:**

within 25 miles

**Salary Estimate**

$35,000+ (195)

$45,000+ (148)

$55,000+ (123)

$70,000+ (85)

$80,000+ (40)

**Job Type**

Full-time (204)

Part-time (15)

Temporary (3)

Contract (2)

**Location**

Denver, CO (216)

## Security Officer-Full Time-Days C.A.R.E.S

HSS Inc. -          21 reviews - Denver, CO 80204

At Denver Health, caring for patients and ensuring that they leave the hospital healthy and well is a top priority, which is why they have adopted our their...

Sponsored by **HSS** - save job

## Master Security Officer-Full Time-Days

HSS Inc. -          21 reviews - Denver, CO 80204

At Denver Health, caring for patients and ensuring that they leave the hospital healthy and well is a top priority, which is why they have adopted our their...

Sponsored by **HSS** - 3 days ago - save job

## EPIC Credentialed Trainer

Denver Health -          120 reviews - Denver, CO

$57,211 a year

The Denver Health system includes the Rocky Mountain Regional Level I Trauma Center, a 525-bed acute care medical center, Denver's 911 emergency medical...

7 days ago - save job - more...

## Manager, HIM

Denver Health -          120 reviews - Denver, CO

$88,091 a year

The Denver Health system includes the Rocky Mountain Regional Level I Trauma Center, a 525-bed acute care medical center, Denver's 911 emergency medical...

15 days ago - save job - more...

## WIC Spec Clerical Support

Denver Health -          120 reviews - Denver, CO

$17.57 an hour

The Denver Health system includes the Rocky Mountain Regional Level I Trauma Center, a 525-bed acute care medical center, Denver's 911 emergency medical...

23 hours ago - save job - more...

## Healthcare Administrative Specialist - Health & Counseling C...

University of Denver -          74 reviews - Denver, CO

The mission of the University of Denver Health and Counseling Center (HCC) is to provide exceptional, inclusive, integrated health care....

10 days ago - save job - more...

My email:

☑ Also get an ema recommended just f

Activate

You can cancel email al

https://www.indeed.com/jobs?as_and=bilingual&as_phr="denver+health"&as_any=&as_not=&as_ttl=&as_cmp=&jt=all&st=employer&salary=&rad...

| Find Jobs | Company Reviews | Find Salaries | Find Resumes | Employers / Post Job | Upload your resume | Sign i |

**what**

bilingual "denver health"

job title, keywords or company

**where**

Denver, CO

city, state, or zip

# EXHIBIT 16

Find ...

**bilingual denver health jobs in Denver, CO**

Recommended Jobs - 102 new

My recent searches

"denver Health" - Denver, CO

bilingual "denver Health" - Denver, CO

Preferred "denver Health" - Denver, CO

prefered "denver health" - Denver, CO

bilingual "denver health" - Denver, CO

bilingual bilingual "denver heal... - Denver, CO

bilingual "denver health" biling... - Denver, CO

"denver health" - Denver, CO

"denver health" language fluency - Denver, CO

» clear searches

Sort by: **relevance** - date

**Distance:**
within 25 miles

**Salary Estimate**
$40,000+ (20)
$45,000+ (18)
$55,000+ (17)
$65,000+ (14)
$70,000+ (13)

**Job Type**
Full-time (39)
Part-time (4)

**Location**
Denver, CO (42)
Aurora, CO (1)
Bilingual "denver Health" jobs na

**Company**

Upload your resume - Let employers find you

### WIC Spec Clerical Support
Denver Health -     120 reviews - Denver, CO
$17.57 an hour
The Denver Health system includes the Rocky Mountain Regional Level I Trauma Center, a 525-bed acute care medical center, Denver's 911 emergency medical...
23 hours ago - save job - more...

### Care Navigator- Eastside Family **Health** Center
Denver Health -     120 reviews - Denver, CO
$23.65 an hour
The Denver Health system includes the Rocky Mountain Regional Level I Trauma Center, a 525-bed acute care medical center, Denver's 911 emergency medical...
8 days ago - save job - more...

### Access Supervisor - Appointment Center
Denver Health -     120 reviews - Denver, CO
$66,654 a year
The Denver Health system includes the Rocky Mountain Regional Level I Trauma Center, a 525-bed acute care medical center, Denver's 911 emergency medical...
1 day ago - save job - more...

### WIC Educator
Denver Health -     120 reviews - Denver, CO
$17.77 an hour
The Denver Health system includes the Rocky Mountain Regional Level I Trauma Center, a 525-bed acute care medical center, Denver's 911 emergency medical...
1 day ago - save job - more...

### Spec Clerical Supp-III
Denver Health -     120 reviews - Denver, CO
$17.57 an hour
The Denver Health system includes the Rocky Mountain Regional Level I Trauma Center, a 525-bed acute care medical center, Denver's 911 emergency medical...
10 days ago - save job - more...

### Health Care Partner II
Denver Health -     120 reviews - Denver, CO
$18.58 an hour

Jobs 1 to 10 of 43

Be the first to s

**bilingual "der
jobs in Denve**

My email:

☑ Also get an ema
recommended just f

Activate

You can cancel email al

**Find Jobs**   Company Reviews   Find Salaries   Find Resumes   Employers / Post Job   Upload your resume   Sign i

what

preferred "denver health"

job title, keywords or company

where

Denver, CO

city, state, or zip

# EXHIBIT 17

Find J

**preferred denver health jobs in Denver, CO**

Upload your resume - Let employers find you

Jobs 1 to 10 of 149

Be the first to s **preferred "de jobs in Denve**

My email:

Recommended Jobs - 103 new

My recent searches

"denver Health" - Denver, CO

bilingual "denver health" - Denver, CO

bilingual "denver Health" - Denver, CO

Preferred "denver Health" - Denver, CO

prefered "denver health" - Denver, CO

bilingual bilingual "denver heal... - Denver, CO

bilingual "denver health biling... - Denver, CO

"denver health" - Denver, CO

"denver health" language fluency - Denver, CO

» clear searches

Sort by: **relevance** - date

**Distance:**
within 25 miles

**Salary Estimate**
$35,000+ (136)
$40,000+ (107)
$55,000+ (85)
$70,000+ (59)
$80,000+ (21)

**Job Type**
Full-time (139)
Part-time (9)
Contract (1)
Temporary (1)

**Location**
Denver, CO (147)
Aurora, CO (2)

## EPIC Credentialed Trainer
Denver Health -        120 reviews - Denver, CO
$57,211 a year
The Denver Health system includes the Rocky Mountain Regional Level I Trauma Center, a 525-bed acute care medical center, Denver's 911 emergency medical...
7 days ago - save job - more...

## WIC Spec Clerical Support
Denver Health -        120 reviews - Denver, CO
$17.57 an hour
The Denver Health system includes the Rocky Mountain Regional Level I Trauma Center, a 525-bed acute care medical center, Denver's 911 emergency medical...
23 hours ago - save job - more...

## Manager, HIM
Denver Health -        120 reviews - Denver, CO
$88,091 a year
The Denver Health system includes the Rocky Mountain Regional Level I Trauma Center, a 525-bed acute care medical center, Denver's 911 emergency medical...
15 days ago - save job - more...

## Healthcare Administrative Specialist - Health & Counseling C...
University of Denver -        74 reviews - Denver, CO
The mission of the University of Denver Health and Counseling Center (HCC) is to provide exceptional, inclusive, integrated health care....
10 days ago - save job - more...

## Access Supervisor - Appointment Center
Denver Health -        120 reviews - Denver, CO
$66,654 a year
The Denver Health system includes the Rocky Mountain Regional Level I Trauma Center, a 525-bed acute care medical center, Denver's 911 emergency medical...
1 day ago - save job - more...

## Care Navigator- Eastside Family Health Center
Denver Health -        120 reviews - Denver, CO
$23.65 an hour
The Denver Health system includes the Rocky Mountain Regional Level I

☑ Also get an ema recommended just f

Activate

You can cancel email al

# EXHIBIT 18

## Denver Health Advertised Open Positions Analysis

| Search Date: 6/24/2017 | No. of Positions | Percentage |
|---|---|---|
| **Denver Health Website Open Positions Includes Part/Full Time Positions** | 220 Positions | 100% |
| ***"Bilingual preferred"* Stated in Ads** | 43 Positions | 19.5% |
| **Number of Positions Stating the word: *"preferred"*** | 149 Positions | 67.7% |
| **Positions Stating *"Preferred"*, Excluding 43 *"bilingual"* Positions** | 106 Positions | 48.2% |

**Examples of "Preferred qualifications"(excluding *"bilingual"*):**
Technical education
Patient outcomes
Workflow design/re-engineering
WIC certification
Advance Health Services Program
Managed Care
Critical Care
State Board of Nursing